UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEFFREY OVERBECK,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

No. 2:14-cv-2645-CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding plaintiff was not disabled for purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand this matter under sentence four of 42 U.S.C. § 405(g).

I. BACKGROUND

Plaintiff, born May 16, 1973, applied on October 30, 2012 for DIB, alleging disability beginning November 1, 2007. Administrative Transcript ("AT") 61, 273-79. Plaintiff alleged he was unable to work due to anxiety, post-traumatic stress disorder ("PTSD"), head injuries, knee problems, and sleep apnea. AT 87-88, 390. In a decision dated June 12, 2014, the ALJ

determined that plaintiff was not disabled.[1] AT 17-28. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant engaged in substantial gainful activity during the following periods: November 2007 to June 2009 and May 2011 to May 2012.
>
> 3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.
>
> 4. The claimant has the following severe impairments: degenerative

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> joint disease of the bilateral knees, traumatic brain injury, obstructive sleep apnea, obesity, a major depressive disorder, and post-traumatic stress disorder.
>
> 5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> 6. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), except that he is able to perform simple, repetitive tasks in a non-public setting, with only occasional interaction with co-workers and supervisors.
>
> 7. The claimant is unable to perform any past relevant work.
>
> 8. The claimant was born on May 16, 1973 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 9. The claimant has at least a high school education and is able to communicate in English.
>
> 10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.
>
> 11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 12. The claimant has not been under disability, as defined in the Social Security Act, from November 1, 2007, through the date of this decision.

AT 19-28.

## II. ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) improperly considered the medical opinions of Dr. Edwards and Dr. Tobon when determining plaintiff's residual functional capacity ("RFC"); and (2) failed to provide clear and convincing reasons for finding plaintiff's testimony less than fully credible.

/////

/////

III. LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

IV. ANALYSIS

A. The ALJ Properly Considered the Medical Opinions in the Record When Determining Plaintiff's RFC

First, plaintiff argues that the ALJ improperly gave "partial to moderate weight" to the opinion of Dr. Edwards, an examining psychologist. Plaintiff also contends that the ALJ erred by giving "little weight" to some of the mental limitations opined by Dr. Tobon, a treating psychiatrist.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

1. Dr. Edwards

On March 7, 2013, Dr. Edwards gave plaintiff a consultative psychological examination. AT 707-13. During this examination, Dr. Edwards administered to plaintiff a number of psychometric tests, including trail making tests, the Wechsler Memory Scale IV and Adult Intelligence IV tests, and the Bender Gestalt Test II. AT 708-12. Dr. Edwards determined that these tests generally revealed "high average" to "superior" score results, including an above average full-scale IQ score of 125, but that plaintiff also had mild-to-moderate limitations in areas regarding memory-related skills. Id. Based on these tests, plaintiff's medical records, and an

interview with plaintiff, Dr. Edwards diagnosed plaintiff with a major depressive order, recurrent PTSD with panic attacks, post-concussion syndrome, and health and financial stressors, and gave him a Global Assessment of Functioning ("GAF") score of 45.[2] AT 712. With regard to mental limitations resulting from these impairments, Dr. Edwards opined that plaintiff had difficulties with memory that would limit his ability to understand, carry out, and remember simple instructions, but that such limitations "could probably be compensated for by provided brief written instructions so [plaintiff] can refresh his memory when needed." AT 713. Dr. Edwards further opined that plaintiff's mental impairments caused him limitations in his ability to respond appropriately to coworkers, supervisors, the public, and work situations. Id. Finally, he opined that plaintiff also had limitations in his ability to deal with changes in a routine work setting. Id.

The ALJ gave "partial to moderate weight" to Dr. Edward's overall opinion. AT 24. More specifically, she determined that Dr. Edward's medical opinions:

> [A]re based on medical findings on examination of the claimant and are well-supported by medically acceptable and laboratory diagnostic techniques. However, Dr. Edwards' determinations, including his assignment of a GAF score of 45, appear to be excessive based on other substantial medical evidence of record.
>
> For example, on Disability Determination Explanation Forms, medical consultants employed by the state diagnosed the claimant with affective disorders, organic mental disorders, and anxiety disorders. The medical consultants determined that the claimant had no more than moderate difficulties in maintaining social functioning or in maintaining concentration, persistence or pace. The medical consultants also opined that the claimant was able to perform simple tasks with limited public contact.

AT 24 (citations to the record omitted).

Plaintiff asserts that these reasons were insufficient to support the ALJ's assignment of reduced weight to Dr. Edwards's opinion. Specifically, plaintiff argues that the ALJ merely reasoned that the aspects of Dr. Edwards's opinion she found "excessive" were contradicted by

---

[2] The Global Assessment of Functioning ("GAF") is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF score of 45 indicates serious symptoms or serious impairment in school, social or occupational functioning. DSM IV-TR at 34.

the State agency physicians' opinions without providing any explanation as to why she found those opinions more persuasive. This argument, however, mischaracterizes the ALJ's discussion regarding the medical opinion evidence in the record. To be sure, the ALJ specifically discussed the reasons why he gave "great weight" to the State agency physicians' opinions, including that they took into account plaintiff's participation in a Master's program and opined limitations that were fully supported by the medical examination findings of plaintiff's treating physicians. AT 24-25.

Furthermore, substantial evidence supported the ALJ's reasoning that the other objective medical evidence in the record conflicted with the aspects of Dr. Edwards's opinion the ALJ found excessive. Indeed, Dr. Edwards's own clinical findings show that plaintiff obtained test results indicating he had above-average-to-superior mental functioning and mental impairments that generally caused him only mild-to-moderate limitations with regard to memory-related activities. AT 710-12. Such results conflicted with the aspects of Dr. Edwards's opinion that indicated that plaintiff had serious impairments in mental functioning, such as his determination that plaintiff had a GAF score of 45. Accordingly, the ALJ determined that while Dr. Edwards's medical findings were well founded and generally supported his opinion, certain aspects of his opinion were extreme in light of that evidence. This was a proper reason for discounting Dr. Edwards's opinion to the extent determined by the ALJ. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Furthermore, as noted above, the ALJ also relied in part on the opinions of the non-examining State agency physicians in determining that Dr. Edwards's opinion conflicted with the other medical evidence. While the ALJ could not reject Dr. Edwards's opinion based solely on the non-examining opinions, she was permitted to refer to them, along with the other objective medical evidence she discussed, in support of her determination that the functional limitations opined by Dr. Edwards were not fully consistent with the other medical evidence. See Lester, 81 F.3d at 831 (holding that while "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating

physician," it may be used by the ALJ to support his RFC determination when the opinion reflects other objective medical evidence in the record). Both non-examining physicians' opinions contained mental limitations less severe than those opined by Dr. Edwards and were generally supported by the other objective medical evidence in the record, including Dr. Edwards's own clinical findings. See AT 163-77, 179-95. Accordingly, the ALJ also properly drew on these opinions to support her conclusion that some of Dr. Edwards's opined limitations were overly-severe in light of the medical evidence in the record.

2. Dr. Tobon

On December 27, 2013, Dr. Tobon filled out a one-page psychiatric medical source statement for plaintiff providing her opinion regarding the extent to which plaintiff's mental impairments imposed work-related mental limitations. Therein, Dr. Tobon opined that plaintiff had "moderate" restriction in his ability to relate and interact with supervisors, coworkers, and the public, and a "mild" limitation in his "[a]bility to understand, remember, and carry out simple one-or-two job instructions." AT 855. She further opined that plaintiff had "marked" restrictions in his ability to understand, remember, and carry out complex work instructions and in his "[a]bility to maintain concentration and attention for at least two hour increments." Id. Dr. Tobon also determined that plaintiff had "marked to extreme" limitations in his "[a]bility to withstand the stress and pressures associated with an eight-hour work day and day-to-day work activity." Id. Finally, she opined that plaintiff's condition "could be long-term," but also noted that plaintiff was "slowly responding to treatment and has had some progress to date." Id.

The ALJ gave "great weight" to Dr. Tobon's opinion with regard to Dr. Tobon's determinations that plaintiff had "mild" limitations with regard to following simple instructions and "moderate" limitations in interacting with supervisors, coworkers, and the public. AT 25. However, the ALJ gave "little weight" to Dr. Tobon's opinion that plaintiff had "marked" limitations in his ability to perform complex tasks, maintain concentration for at least 2 hour increments, and handle workplace pressure and stress. Id. In support of this determination, the ALJ reasoned that Dr. Tobon's opinions to which she assigned little weight:

> [A]re inconsistent with the evidence of record as a whole, including the claimant's ability to participate in a Master's program and get A's and B's for grades. These conclusions are also inconsistent with the medical consultants employed by the state.
>
> In addition, during the hearing, Alfred Jonas, M.D., a psychiatrist and mental expert, testified that he reviewed that [sic] entire record and determined that there was nothing in the record to support Dr. Tobon's opinion that the claimant's concentration and susceptibility to stress were marked. Dr. Jonas also noted that Dr. Tobon had found the claimant to be markedly impaired for complex tasks, but recognized that he was capable of independently managing finances, even though the claimant thought that he was not able to do so, and there was no meaningful demonstration of such a marked impairment in the record. Dr. Jonas also recognized that the claimant could not be considered to have such marked impairments if he was in a Master's program or working with canines.

Id.

Plaintiff contends that these are not specific and legitimate reasons for discounting the aspects of Dr. Tobon's opinion to which the ALJ gave little weight. More specifically, and similar to his argument regarding the ALJ's consideration of Dr. Edwards's opinion, plaintiff asserts that the ALJ merely reasoned that Dr. Tobon's opinion conflicted with those of the State agency physicians without explaining how these opinions conflicted. However, as discussed above with regard to Dr. Edwards's opinion, the ALJ stated in her decision the reasons why she accorded great weight to the State agency physicians' opinions and lesser weight to certain aspects of Dr. Tobon's opinion. AT 24-25.

Moreover, the ALJ also determined that the aspects of Dr. Tobon's opinion to which she assigned "little weight" conflicted with the opinion of Dr. Jonas, a medical expert who testified at plaintiff's hearing and opined that there was nothing in plaintiff's medical records to indicate that plaintiff was markedly impaired in his ability to concentrate or handle stress. AT 25, 131. In forming his opinion, Dr. Jonas referred to plaintiff's medical records and statements showing that he regularly attended 90-minute long therapy sessions and contributed throughout each session, attended a Master's program and received A's and B's, had a "working memory IQ" score at the "high end of average," and had been employed as a software advisor or consultant for several years after he received the head injuries that allegedly caused his memory problems. AT 126-27, 131-33, 140, 142. Based on this evidence, Dr. Jonas opined that there is no basis in the medical

record to determine that plaintiff's mental impairments would cause him to miss any work and that plaintiff was, at most, mildly impaired with regard to maintaining concentration, persistence, and pace. AT 131-32, 137-38. The ALJ assigned "great weight" to Dr. Jonas's opinion and reasoning, finding that it was consistent with the objective medical evidence in the record. AT 26. In making this determination, the ALJ referenced plaintiff's outpatient records from the Veterans' Administration ("VA") hospital from late 2013 through early 2014 indicating that plaintiff did not have concentration or comprehension difficulties and had organized thought processes. AT 26 (citing AT 1188-1230). The court's review of this evidence demonstrates that the ALJ's determination that it supported the more mild memory, concentration, and coping limitations opined by Dr. Jonas instead of Dr. Tobon's more extreme opinion was reasonable. E.g., AT 1189, 1194, 1196. Accordingly, the ALJ properly relied on Dr. Jonas's contrary opinion to discount the aspects of Dr. Tobon's opinion to which she ascribed lesser weight as it was supported by substantial medical evidence from the record. See Thomas, 278 F.3d at 956-57 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

Furthermore, the ALJ also relied on Dr. Jonas's opinion that Dr. Tobon's opinions regarding plaintiff's ability to concentrate, remember, and cope with stress were internally inconsistent with Dr. Tobon's other findings. AT 25, 131, 139-40. Specifically, Dr. Jonas found that Dr. Tobon's opinion that plaintiff was markedly impaired in memory, concentration, and his ability to perform complex tasks conflicted with his other opinion that plaintiff was still capable of handling his own finances. AT 139-40. The ALJ agreed with Dr. Jonas and found that these aspects of Dr. Tobon's opinion did conflict. AT 25. Such a determination constituted an additional proper reason for the ALJ to assign diminished weight to Dr. Tobon's opinion that plaintiff had certain "marked" mental limitations as it was the ALJ's role to resolve the conflicts present in Dr. Tobon's opinion. Andrews, 53 F.3d at 1039-40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). Accordingly, the ALJ provided multiple specific and legitimate reasons for discounting Dr.

Tobon's opinion that plaintiff had certain "marked" mental limitations.

B. The ALJ Properly Assessed the Credibility of Plaintiff's Testimony

Next, plaintiff argues that the ALJ erred in assessing the credibility of plaintiff's testimony because she determined that it was only partially credible without providing clear and convincing reasons for doing so.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6

(9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ provided the following reasons in support of her adverse credibility determination:

> [A]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's and his girlfriend's statements concerning intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision, as his activities and functioning have been inconsistent with the allegations. For example, although the claimant and his girlfriend indicated that the he had limitations with standing and walking, Dr. Schwartz and medical consultants revealed that he was able to stand and walk up to 6 hours in an 8-hour workday. In addition, despite their allegations of the claimant having conflict with other students and instructor, he has been able to continue going to school with accommodations and has been completing his classes. In fact, the claimant testified that he tries to do 2 hours of homework every day. The claimant has revealed that he has a service dog for PTSD; however, I note that he did not have the dog at the hearing.
>
> The claimant has also revealed that he was able to attend a group event at a temple with 15 to 20 other people without any significant problems. Although the claimant has conflicts with others, he has attended a Master's program and has been completing his coursework with grades of A's and B's. I also note that the claimant's testimony was frequently vague despite attempts to elicit answers to questions in more detail.

AT 26-27.

Plaintiff argues that the ALJ's reasons for finding his testimony not credible are not supported by substantial evidence in the record. Specifically, plaintiff argues that the ALJ's reasons related to plaintiff's ability to attend a Master's program and excel in his coursework ignores his testimony that he had experienced conflicts with his professors and other students, in addition to other difficulties. However, the ALJ expressly stated that she considered these alleged problems in arriving at her conclusion regarding plaintiff's credibility and still determined that they did not diminish plaintiff's ability to perform certain mental work-related functions to the degree that plaintiff alleged. Indeed, the ALJ highlighted plaintiff's statements that he has been able to complete his classes with A's and B's and do 2-to-4 hours of homework per night as

evidence that his claims that his mental impairments caused extreme cognitive limitations, such as restrictions on his ability to concentrate for extended periods of time or follow directions, were exaggerated. AT 26-27. Furthermore, the ALJ took into account plaintiff's testimony regarding his difficulties dealing with others in school by including in her RFC determination a limitation on plaintiff's ability to interact with coworkers and supervisors, and a complete restriction from any public contact. AT 21. Nevertheless, she did not find plaintiff's social difficulties to be as severe as plaintiff alleged. Such findings based on plaintiff's testimony regarding his school-related activities were reasonable and constituted substantial support for the ALJ's adverse credibility decision. See Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [the claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

The ALJ also found that plaintiff frequently gave vague answers to the ALJ's questions during the hearing, therefore further diminishing plaintiff's credibility. Indeed, a review of the hearing transcript demonstrates that at least some of plaintiff's responses to the ALJ's questions were unclear or not fully responsive. E.g., AT 70-72, 103. Plaintiff argues that his vague testimony actually corroborated his complaint that his mental impairments caused him difficulties in following instructions. However, the ALJ's interpretation that the lack of clarity in plaintiff's responses indicated evasiveness and a lack of candor on plaintiff's part was still a rational determination under the circumstances. See Molina, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Finally, the ALJ also determined that plaintiff's complaints regarding the extent of his physical limitations were not supported by the objective medical evidence in the record. Specifically, the ALJ concluded that plaintiff's statements concerning limitations in his ability to stand and walk conflicted with the determination that plaintiff could stand and walk up to 6 hours in an 8-hour workday opined by Dr. Schwartz, an examining physician, and the two State agency physicians who reviewed plaintiff's medical records. AT 26. Although lack of medical evidence

cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). Because the ALJ provided other clear and convincing reasons for discounting plaintiff's testimony, it was not error for her to also consider this conflict between plaintiff's testimony and the objective evidence in support of her adverse credibility determination.

C. The ALJ Improperly Discounted the VA Disability Determination When Determining Plaintiff's RFC

While the issue is not addressed in the parties' briefing, the court determines, after a review of the ALJ's decision and the record as a whole, that the ALJ's reasons for her assignment of reduced weight to the VA's disability determination finding plaintiff 80 percent disabled under its disability guidelines are inadequate. See McCartey v. Massanari, 298 F.3d 1072 (9th Cir. 2002) (remanding for benefits based on ALJ's failure to properly consider VA's determination that the claimant was 80 percent disabled); Jones, 760 F.2d at 995 ("We review the Secretary's decision to determine whether it is supported by substantial evidence in the record as a whole and is based on proper legal standards."). The Ninth Circuit Court of Appeals has held that "an ALJ must ordinarily give great weight to a VA determination of disability" due to the marked similarities between the two administrations' procedures and standards for determining disability. McCartey, 298 F.3d at 1076. However, "'because the VA and SSA criteria for determining disability are not identical,'" an ALJ may "'give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record.'" Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 695 (9th Cir. 2009) (quoting McCartey, 298 F.3d at 1076); see also Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("We note that, on remand, the ALJ is not compelled to adopt the conclusions of the VA's decisions wholesale, but if she deviates from final VA decisions, she may do so based only on contrary evidence that is persuasive, specific, valid and supported by the record.").

Here, the ALJ discussed the VA's disability determination and discounted that evidence for the following reasons:

////

> I note that claimant has at least an overall or combined rating of 80 percent for VA service-connected impairments. However, based upon a review of the medical evidence of record, I give no significant weight to the VA disability rating for a number of reasons. First, the claimant's service-connected disabilities were effective in July 2010, although the claimant has been shown to have a potential onset date of May 2012 due to his work history. Thus, there is no necessary correlation between the VA disability rating and the claimant's ability to work. In addition, as discussed above, the medical evidence of the record as a whole demonstrates the claimant to have the ability to perform unskilled medium work. The VA disability ratings for the claimant's service-connected disabilities therefore do not necessarily reflect the claimant's functional limitations under SSA guidelines. Consequently, although I acknowledge the claimant's service connected impairments as determined by the VA, less weight is given to the total disability rating related to those impairments.

AT 26 (citations to the record omitted). For the reasons discussed below, the court finds that the ALJ's reasons for discounting the VA's disability rating are not "persuasive, specific, valid and supported by the record." Valentine, 574 F.3d at 695.

First, the ALJ's own findings regarding the time periods plaintiff did not engage in substantial gainful activity contradict her determination that the VA's disability rating did not correlate with plaintiff's ability to work during the relevant time period. When discussing the VA disability rating evidence, the ALJ noted that plaintiff's onset date likely did not occur until May 2012 due to plaintiff having performed substantial gainful activity during for several spans of time between the alleged onset date of November 1, 2007 and that later time. AT 26. However, earlier in her decision, the ALJ found that while plaintiff had engaged in substantial gainful activity between November 2007 to June 2009 and May 2011 to May 2012, therefore disqualifying him from receiving benefits during those time periods, see 20 C.F.R. § 404.1520, there had been "continuous 12-month period(s) during which [plaintiff] did not engage in substantial gainful activity." AT 19. Necessarily among these 12-month periods was the nearly two-year span of time between June 2009 and May 2011,[3] which was prior to the "potential onset date" the ALJ discussed in connection with discounting the VA's disability determination. The

[3] The ALJ noted that plaintiff "worked at a part-time job with the military" in 2010, but appears to have determined that this work did not amount to substantial gainful activity based on the fact that she did not find that plaintiff was engaged in such activity at any time during 2010. AT 19.

VA's disability decision was effective July 12, 2010, AT 295, meaning it fell within this eligibility period and, in the very least, correlated with plaintiff's ability to perform work during that time. Furthermore, plaintiff himself testified during the administrative hearing on May 8, 2014 that he was continuing to receive VA benefits based on the July 12, 2010 disability rating, AT 85, further indicating that the VA continued to find him 80 percent disabled throughout the time since its initial determination on July 12, 2010. In short, the record does not support the ALJ's determination that the VA's disability rating did not correlate to plaintiff's ability to work based on his work history during the relevant time period. Accordingly, the court finds the ALJ's reasoning unpersuasive.

Second, the ALJ discounted the VA's disability determination because the rest of the record as a whole supported the ALJ's determination that plaintiff could perform unskilled medium work. However, this reasoning largely relies on the ALJ's RFC findings regarding plaintiff's physical RFC, i.e., the evidence supporting ALJ's determination that plaintiff could perform medium work, while the VA's 80 percent disability rating was based primarily on plaintiff's anxiety disorder, AT 295, a mental impairment. Moreover, the ALJ failed to point to any specific evidence from the medical record to support her reasoning that it undermined the VA's disability rating. <u>See</u> <u>Hiler</u>, 687 F.3d at 1212 (holding that an ALJ may deviate from a VA disability decision "based only on contrary evidence that is 'persuasive, *specific*, valid' and supported by the record" (emphasis added)).

Finally, the ALJ discounted the VA disability rating because the VA's disability framework "do[es] not necessarily reflect the claimant's functional limitations under SSA guidelines." AT 26. This reason is also insufficient. The Ninth Circuit Court of Appeals has clearly held that an ALJ is required to "ordinarily give great weight to a VA determination of disability" specifically "because of the marked similarity between [the VA and Social Security] disability programs." <u>McCartey</u>, 298 F.3d at 1076. While an ALJ may assign lesser weight to a VA disability rating, she may do so only on the basis of persuasive, specific, valid reasons supported by the record; not simply because the disability rating was determined under the VA's evaluative framework. <u>Id.</u> Accordingly, the ALJ's reasoning was in error.

In sum, the ALJ's reasons for discounting the VA's disability rating were not persuasive, specific, valid reasons supported by the record. Accordingly, the ALJ's assignment of reduced weight to that determination was in error. See McCartey, 298 F.3d at 1076.

D. The ALJ's Error Requires Remand for Further Proceedings

When the court finds that the ALJ committed prejudicial error, it has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 003, 1020 (9th Cir. 2014). Nevertheless, even when the "credit-as-true" criteria have been met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("[W]e generally remand for an award of benefits only in rare circumstances, . . . where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." (citations and quotation marks omitted)).

Here, the ALJ's error requires this matter to be remanded for further proceedings. While a VA disability rating of 80 percent, when credited as true, would ordinarily require remand for benefits, see McCartey, 298 F.3d 1072 (crediting VA's 80 percent disability rating as true and remanding for award of benefits), and the record in this matter is extensive and generally well developed, there are a number of ambiguities and contrary evidence in the record that cause serious doubt as to disability and convince the court that further administrative proceedings would be useful. For instance, while the VA gave plaintiff an 80 percent disability rating effective July 12, 2010, the record indicates that plaintiff worked a part-time military job in 2010, e.g., AT 397. However, the record does not clearly indicate whether he worked that job for the entirety of 2010,

or just part of that year. Nor does it appear to provide any description of what that part-time work entailed. Furthermore, there exists medical evidence in the record throughout the relevant time span regarding the impact of plaintiff's mental impairments that appears to conflict the VA disability rating in a manner that raises serious doubts as to whether plaintiff is disabled within the meaning of the Social Security Act. E.g., AT 708-12, 855, 953-57, 1189, 1194, 1196. It is the ALJ's role to resolve such conflicts in the medical testimony and any ambiguities in the record. See Edlund, 253 F.3d at 1156. Accordingly, the court finds it appropriate to remand this action for further proceedings.

On remand, the ALJ shall resolve the ambiguities discussed above and address the VA's disability rating in a manner consistent with this order and the relevant legal standards. If the ALJ decides to give less weight to the VA's disability rating, the ALJ shall give persuasive, specific and valid reasons for doing so that are supported by the record.

V. CONCLUSION

For the reasons stated herein, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and for further findings addressing the deficiencies noted above. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is granted for purposes of readdressing the VA disability rating finding plaintiff 80 percent disabled effective July 12, 2010.

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is denied; and,

3. This matter is remanded for further proceedings consistent with this order.

Dated: October 15, 2015

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 overbeck2645.ss